LEON FRASER, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* FOR KEITH FRASER, AND LEON FRASER, Jr., COMPLAINANT, v. ROBIN DEE DAY CAMP, ROBIN DEE PRIVATE SCHOOL AND DAY CAMP, ROBIN DEE NURSERY SCHOOL AND JACK ALVINO, RESPONDENTS-APPELLANTS.

Decided May 17, 1965.

Mr. *Vincent D. Girard* argued the cause for respondents-appellants.

Mr. *Howard H. Kestin,* Deputy Attorney General, argued the cause for Division on Civil Rights (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PROCTOR, J. Respondents appealed, pursuant to *R. R.* 4:88–8, from a decision and order of the Director of the Division on Civil Rights. This court certified the matter before argument in the Appellate Division.

The complainant, Dr. Leon Fraser, a Negro, filed a complaint with the Division on Civil Rights alleging that the respondent, Jack Alvino, who is the owner and operator of the Robin Dee Day Camp, committed an act of discrimination because of race by refusing to admit Dr. Fraser's children to the camp. A hearing was held before a hearing examiner of the Division. The hearing examiner found that Alvino, individually and trading as Robin Dee Day Camp, Robin Dee Private School, and Robin Dee Nursery School, did commit an act of unlawful discrimination. The Division adopted the hearing examiner's findings and ordered the respondent to cease discriminating unlawfully "in any day camp, private school or nursery school that may be a place of public accommodation within the purview of the Law Against Discrimination, *N. J. S. A.* 18:25–1 *et seq.*"

The evidence before the hearing examiner showed the following facts: On March 24, 1963 respondent Alvino published an advertisement in a daily newspaper announcing the facilities and programs of the Robin Dee Day Camp. The

advertisement described two programs for children from six to fourteen years of age, and one for children from two to five years of age. Inspection of the premises by appointment was invited. The advertisement also stated, "Submission of personal application is only considered an offer to enroll and is subject to acceptance." Dr. Fraser wrote to the day camp requesting a brochure and application blanks for his two boys, ages nine and five. Several weeks later, not having received a reply, Mrs. Fraser telephoned the camp and spoke to Miss Virginia Brusakis, who was the secretary and admissions clerk of both the school and the day camp. Miss Brusakis took Mrs. Fraser's name and address, and said that the respondent would be advised of her call. The following day Mrs. Fraser was called by an employee from the school, who relayed a message from the respondent that "he could not help you." Dr. Fraser then called the day camp for clarification, but being unsuccessful, he called the respondent's home. An employee of the school answered and in response to his question about the previous day's message, she asked him if he was colored. When he said that he was, she replied, "Well that is apparently what he had in mind that we do not accept colored at the Robin Dee Day Camp." Later that day respondent called the Fraser home and arranged for an interview with Dr. Fraser. At the interview, according to Dr. Fraser, the respondent said that he was not prejudiced but that he was afraid that if he should accept Negroes it would injure his business. Respondent told him that he had turned down two other applicants solely because they were Negroes. Respondent did not contradict Dr. Fraser's version of the interview.

About two months later, after the Division had intervened, Dr. and Mrs. Fraser and a field representative for the Division went to the camp. Miss Brusakis completed the applications of the two children but the next day the applications were rejected by the respondent without explanation.

At the hearing the respondent took several and often contradictory positions as to why he had rejected the Fraser

boys. He asserted that as an owner of a private business he did not have to give a reason. When the hearing examiner ordered him to answer, he stated that "it was neither feasible nor practical to accept them." After consulting with his attorney, respondent then stated that he had rejected the applications because Dr. Fraser failed to follow proper office procedure and because his subsequent actions were coercive. Respondent made no suggestion that the Fraser boys were unable to meet the health, physical, or emotional standards required of the children attending the day camp; also, there was no suggestion that the Frasers were unable to pay the required fees.

The respondent argues that there is no substantial evidence to show that he discriminated against the Fraser children. However, the evidence clearly establishes that the Fraser children were rejected by the respondent solely because of their race. The testimony as to the Frasers' repeated attempts to enroll their children and the respondent's rejection of them because of their race was virtually uncontroverted. The respondent's belated explanation that the applications were rejected because the Frasers did not follow proper office procedure is incredible. A profit-making business could not possibly survive if all potential customers were treated as the Frasers were.

The principal issue on this appeal is whether the Robin Dee Day Camp is a place of public accommodation within the meaning of the Law Against Discrimination, *N. J. S. A.* 18:25–1 *et seq.*

*N. J. S. A.* 18:25–4 provides, in pertinent part, that "All persons shall have the opportunity * * * to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation * * * without discrimination because of race * * *." And *N. J. S. A.* 18:25–12(f) makes it an unlawful discrimination for a proprietor or an employee of any place of public accommodation to deny to any person such public accommodations on account of his race.

In defining a place of public accommodation, *N. J. S. A.* 18:25–5(*l*) provides:

" 'A place of public accommodation' shall include any tavern, roadhouse, or hotel, whether for entertainment of transient guests or accommodation of those seeking health, recreation or rest; any retail shop or store; any restaurant, eating house, or place where food is sold for consumption on the premises; any place maintained for the sale of ice cream, ice and fruit preparations or their derivatives, soda water or confections, or where any beverages of any kind are retailed for consumption on the premises; any garage, any public conveyance operated on land or water, or in the air, and stations and terminals thereof; any public bathhouse, public boardwalk, public seashore accommodation; any auditorium, meeting place, or public hall; any theatre, or other place of public amusement, motion-picture house, music hall, roof garden, skating rink, swimming pool, amusement and recreation park, fair, bowling alley, gymnasium, shooting gallery, billiard and pool parlor; any comfort station; any dispensary, clinic or hospital; and any public library, any kindergarten, primary and secondary school, trade or business school, high school, academy, college and university, or any educational institution under the supervision of the State Board of Education, or the Commissioner of Education of the State of New Jersey. Nothing herein contained shall be construed to include or to apply to, any institution, bona fide club, or place of accommodation, which is in its nature distinctly private; nor shall anything herein contained apply to any educational facility operated or maintained by a bona fide religious or sectarian institution, and the right of a natural parent or one in loco parentis to direct the education and upbringing of a child under his control is hereby affirmed; nor shall anything herein contained be construed to bar any private secondary or post-secondary school from using in good faith criteria other than race, creed, color, national origin or ancestry, in the admission of students."

The respondent first argues that since day camps are not included in the places of public accommodation enumerated in *N. J. S. A.* 18:25–5(*l*), the Legislature must have intended to exclude them from the scope of the statute. We disagree. Subsection (*l*) begins with the statement that " 'A place of public accommodation' *shall include* \* \* \*." (Emphasis supplied) Ordinarily, the term "include" is used as a word of enlargement and not of limitation. See *Cuna v. Board of Fire Com'rs, Avenel*, 42 *N. J.* 292, 304 (1964), and cases cited therein. The Civil Rights Law, *N. J. S. A.* 10:1–1 *et seq.*, especially *R. S.* 10:1–2 and 10:1–5, contains provi-

sions similar to those in question here. In *State v. Rosecliff Realty Co.*, 1 *N. J. Super.* 94 (*App. Div.* 1948), certif. denied 1 *N. J.* 604 (1949), the court held that the use of the word "include" in section 5 showed a legislative intent not to limit the meaning of "places of public accommodation" to those places specifically mentioned. And in *Levitt & Sons, Inc. v. Div. Against Discrimination, etc.*, 31 *N. J.* 514, 526–527, appeal dismissed for lack of a substantial federal question, 363 *U. S.* 418, 80 *S. Ct.* 1257, 4 *L. Ed.* 2d 1515 (1960), this court rejected the contention that the meaning of "publicly assisted housing accommodations" in *N. J. S. A.* 18:25–5(k) [now m] was restricted to the enumerated examples, and held that those examples were only illustrative of the meaning of the general phrase, since the term "shall include" preceded their enumeration.

▮ In the light of the liberal construction to be given the Law Against Discrimination, see *Levitt & Sons, Inc. v. Div. Against Discrimination, etc., supra*, 31 *N. J.*, at *p.* 524, we conclude that the listed places of public accommodation are merely illustrative of the accommodations the Legislature intended to be within the scope of the statute. Other accommodations, similar in nature to those enumerated, were also intended to be covered.

▮ The respondent calls our attention to *Assembly Bill No.* 480 (1964) which would have amended subsection (1) to specifically include, *inter alia*, day camps. This bill was never reported out of committee. The respondent argues that the existence of the bill shows that the Legislature intended to exclude day camps when it enacted the Law Against Discrimination in 1949. Assuredly, the mere introduction of a bill some years after the passage of the original enactment can in no way be instructive in determining the intent of the Legislature which enacted the original law. A contention similar to that made by the respondent was rejected in *Levitt & Sons, Inc. v. Div. Against Discrimination, etc., supra*, 31 *N. J.*, at *pp.* 525, 527–528.

There remains to be decided whether the respondent's day camp is a place of public accommodation within the meaning of the law.

The respondent is the sole owner and operator of the Robin Dee Day Camp, the Robin Dee Private School, and the Robin Dee Nursery School. The operations are conducted for profit without the assistance of federal or state funds. The private school is a kindergarten program which runs during the regulation public school year. The nursery school program runs throughout the year. The day camp program operates during the summer with an enrollment of over 150 children. The kindergarten and nursery school are located at #1233 Hamilton Avenue, Hamilton Township. The day camp is located at #1 Haslach Avenue in the same township. However, all the summer programs are conducted at the Haslach Avenue day camp. According to the respondent, the above operations are "just another way of saying Jack Alvino." The camp occupies six and a half acres. Facilities there include a corral, an outdoor craft area, several cabins used for arts and crafts, a pavilion used for a lunchroom and for showing movies, an outdoor swimming pool with showers and locker rooms, a snack bar, and swings and slides. At the time of the hearing a building which will be used to house the kindergarten and nursery school was partially completed and being used for day camp activities.

Thus, the day camp offers accommodations which have many attributes in common with swimming pools, recreation and amusement parks, motion picture houses, theatres, music halls, gymnasiums, kindergarten and primary schools, all of which are specifically enumerated in subsection (l). That subsection includes a lengthy enumeration of a wide variety of accommodations which can be characterized either as educational or recreational in nature. A day camp is essentially an educational-recreational accommodation for children. We therefore think it clear that respondent's day camp is the type of accommodation which the Legislature intended to reach.

■ As we noted above, the Frasers responded to an advertisement in the public press. The respondent admitted placing this and several similar advertisements in the newspapers. Among the activities mentioned in the advertisements were swimming, crafts, hikes, athletics, dancing, dramatics and music. It is therefore clear that the day camp has been offered to and is dependent upon the broad-based participation of members of the general public. As was said by Judge Goldmann in *Evans v. Ross*, 57 *N. J. Super.* 223, 231 (*App. Div.* 1959), certif. denied 31 *N. J.* 292 (1960):

"* * * [A]n establishment which caters to the public, and by advertising and other forms of invitation induces patronage generally, cannot refuse to deal with members of the public who have accepted the invitation, because of their race, creed, color, national origin or ancestry. The law is designed to insure that all citizens of this State shall have equal rights as members of the public and not be subjected to the embarrassment and humiliation of being invited to an establishment, only to find its doors barred to them. Once a proprietor extends his invitation to the public he must treat all members of the public alike."

In the light of the nature of the facilities and activities offered to the general public by the respondent's day camp, we hold that it is a public accommodation within the meaning of the law.

■ The language appearing in respondent's advertisement that "Submission of a personal application is only considered an offer to enroll and is subject to acceptance" does not militate against our finding. In *Jones v. Haridor Really Corp.*, 37 *N. J.* 384, 396 (1962), this Court in holding that the Law Against Discrimination could not be circumvented by a corporate technique stated:

"No device, whether innocent or subtly purposeful, can be permitted to frustrate the legislative determination to prevent discrimination."

The record amply supports the conclusion that the above language in the respondent's advertisement was used as a device to exclude Negro applicants. Such a device cannot be used to

evade the Law. See *Camp-of-the-Pines, Inc. v. New York Times Co.*, 184 *Misc.* 389, 53 *N. Y. S. 2d* 475 (*Sup. Ct.* 1945), and *Castle Hill Beach Club, Inc. v. Arbury*, 2 *N. Y. 2d* 596, 162 *N. Y. S. 2d* 1, 142 *N. E. 2d* 186 (*Ct. App.* 1957).

▮ Finally, the respondent argues that the amended complaint was defective as a matter of law and therefore should have been dismissed.

The amended complaint charged:

"Robin Dee Day Camp, Robin Dee Private School and Day Camp, Robin Dee Nursery School, and Jack Alvino * * * with an unlawful practice within the meaning of the Law Against Discrimination * * * because of * * * race * * *."

At the hearing, the respondent moved to dismiss the amended complaint as to the private school and nursery school because they are entities separate from the day camp, and the amended complaint did not charge them with an act of discrimination. The hearing examiner, however, amended the complaint to make "Jack Alvino, individually and trading as Robin Dee Day Camp, Robin Dee Private School, Robin Dee Nursery School" the sole respondent. The order of the Division was "That, henceforward, the Respondent Jack Alvino, shall not unlawfully discriminate in any day camp, private school or nursery school that may be a place of public accommodation * * * ." The hearing examiner justified his amendment to the complaint and the scope of the order on the grounds that the Robin Dee Day Camp, Private School and Nursery School were not legal entities but were merely trade names adopted by the respondent for the respective phases of a unified operation of which he was the sole proprietor, operator and director. The respondent admits that he is the sole proprietor and that all the operations were just another way of saying Jack Alvino. He denies, however, that the three facilities are a unitary operation.

The evidence at the hearing clearly showed that there was an extensive interchange of the physical and administrative facilities of the kindergarten (private school), the nursery

school, and the day camp. Several of the administrative employees served all three operations. All the clerical work was done at the Hamilton Avenue school, and the telephone number in the advertisement of the day camp was the number at the school. The day camp and nursery school were advertised together. The station wagons owned by the respondent were used to transport children using all the facilities. The recreational facilities at Haslach Avenue were used by both the nursery school and day camp children. At the time of the hearing, a building intended to house the nursery school and private school at the Haslach Avenue property was partially completed, and being used by the day camp.

In view of the above, we hold that the three facilities were so interdependent and intermingled that they were in effect one unitary operation. See *Jones v. Haridor Realty Corp.*, *supra*, at *p.* 395. In any event, respondent concedes that *N. J. S. A.* 18:25–5(*l*) prohibits him from unlawful discrimination in the nursery school and private school.

The order of the Division is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.