Lynda **VANTINE**, Appellant,

v.

**CITY OF TULSA**, Appellee.

No. M–73–93.

Court of Criminal Appeals of Oklahoma.

Nov. 20, 1973.

Rehearing Denied Dec. 11, 1973.

William P. Huckin, Jr., Tulsa, for appellant.

Jack Morgan, Chief Prosecutor, Waldo F. Bales, City Atty., City of Tulsa, for appellee.

## DECISION

BRETT, Judge:

This is an appeal from the Municipal Criminal Court of Tulsa, Oklahoma. Appellant, Lynda Vantine, hereinafter referred to as defendant, as she appeared in the trial court, was convicted for violation of the Tulsa City Public Accommodations Ordinance, in Case No. 153022; she was found guilty by a jury and sentenced to pay a fine of Three Hundred Dollars ($300.00); and from that judgment and sentence this appeal was lodged.

Defendant was alleged to have violated the Tulsa Public Accommodations Ordinance when she refused to enroll the three year old child of Mr. and Mrs. Dale Hogg in "The Little Pre-School," operated by defendant, because the child is black. Defendant admitted that she did not enroll the child in the school because she was black, but declared that such refusal was for economic reasons and not because of personal prejudices.

Defendant filed a partial transcript of testimony, which was supplemented by the City's counter-designation filed "out of time." With the Court's permission, the City also filed the judgment and sentence "out of time." Defendant now has outstanding a motion to strike a portion of the transcript filed by the City of Tulsa. Defendant's motion is premised upon the fact that the City's counter-designation of record was not filed in compliance with this Court's Rule 2.7, subd. B, pertaining to the filing of such counter-designation within ten days of the time defendant filed his designation of record. However, when the record is considered in its entirety, the City's Response to said motion is sufficient to cause this Court to deny defendant's Motion to Strike.

Defendant's first proposition asserts that the transcript of testimony filed with the appeal fails to reflect the municipal ordinance under which the prosecution occurred. Notwithstanding defendant's contention, attached to that portion of the transcript of testimony is the prosecution's Exhibit 3, which consists of Tulsa Municipal Ordinance No. 10399, *introduced to establish venue*, and Chapter 20, of Title 27, of the Revised Ordinances concerning Public Accommodations and Fair Housing, under which this prosecution was initiated. Because of defendant's contention that the ordinance was not stipulated to, or introduced into evidence, as reflected by defendant's brief, the City filed the counter-

designation for the remaining portion of the transcript of testimony out of time. That portion of the record does reflect both the stipulation and admission into evidence of the two municipal ordinances. Under the circumstances and the condition of the record, we deny defendant's Motion to Strike, and defendant's first proposition of this appeal as well.

Defendant's second proposition asserts that the Public Accommodation Ordinance is in conflict with the provisions of State Public Accommodations Act, 25 O.S.1971, §§ 1701–1802. Section 1702 of the Act provides:

"A political subdivision may adopt and enforce an ordinance prohibiting discrimination because of race, color, religion, sex, or national origin not in conflict with a provision of this Act."

The City of Tulsa enacted such an ordinance and now defendant challenges its validity, as being in conflict with the State Statute; but in challenging the validity of the ordinance, defendant relies upon aspects not germane to the facts of the instant case. i. e., amusement parks, cemeteries, etc., hereafter discussed further. Secondly, defendant asserts conflict exists between the enforcement requirements. The State Statute provides for issuance of a restraining order, whereas, the municipal ordinance provides for the imposition of a fine.

It is initially set forth in the purpose of the Act that it is " . . . to provide for execution within the State of the policies embodied in the Federal Civil Rights Act of 1964 and to make uniform the law of those states which enact this Act." 25 O.S.1971, § 1101(b), thereafter sets forth the following:

"This Act shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this Section and the special purposes of the particular provision involved."

Article 4 of the Act pertains to "Discrimination in Public Accommodations." 25 O.S.1971, § 1401, defines public accommodations thusly:

"As used in this Act unless the context requires otherwise:

(1) 'place of public accommodation' includes any place, store or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts patronage or trade of the general public or which is supported directly or indirectly by government funds: except that

(i) a private club is not a place of public accommodation, if its policies are determined by its members and its facilities or services are available only to its members and their bona fide guests;

(2) 'place of accommodation' does not include barber shops or beauty shops or privately-owned resort or amusement establishments or an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of the establishment as his residence."

The New Jersey Supreme Court discussed the phrase " 'A place of public accommodation' shall include . . ." as it is contained in N.J.S.A. 18:25–5(1), in Fraser v. Robin Dee Day Camp, 44 N.J. 480, 485, 210 A.2d 208, 211 (1965), as follows:

"Ordinarily, the term 'include' is used as a word of enlargement and not of limitation. See Cuna v. Board of Fire Com'rs, Avenel, 42 N.J. 292, 304, 200 A.2d 313 (1964)."

Thereafter, the New Jersey Court stated:

"In the light of the liberal construction to be given the Law Against Discrimina-

tion, see Levitt & Sons, Inc., v. Div. Against Discrimination, etc. supra, 31 N.J. 514 at p. 524, 158 A.2d 177, we conclude that the listed places of public accommodation are merely illustrative of the accommodations the Legislature intended to be within the scope of the statute. Other accommodations, similar in nature to those enumerated, were also intended to be covered."

The United States Custom Court in Morris Friedman & Co. v. United States, 351 F.Supp. 611, 613 (1972), states with reference to the term "includes" the following:

" 'Includes' has various shades of meaning and has been used both as a term of enlargement and of limitation or restriction. Thus, it may be used to preface an illustrative application of a general class, or in the sense of 'also' to add to the general class a species which does not naturally belong to it. (Citations omitted) Or it may be used synonymously with 'means' or 'comprise' as a word of limitation specifying particularly what belongs to the genus."

■■ In the instant case, there is little doubt that the legislative intent was to use the word "includes" in the sense of enlargement; otherwise, such terms as "any place" or "other establishment" would not have been used. We therefore conclude, as did the New Jersey Supreme Court in interpreting the New Jersey Act, that the words of the statute are not limiting, and consequently the words of the Tulsa Public Accommodations Ordinance are not an enlargement of the State Statute, as applied to the facts of this case. This is borne out by the fact that after defining "public accommodation" the legislature set forth specific exemptions from the classification; and notwithstanding the fact that the Tulsa Ordinance includes barber shops, beauty shops, and amusement parks, which are specifically excluded by the legislative act, by the facts of the instant appeal we are not called upon to determine the validity of those inclusions in the ordinance. In the instant case we are only concerned with the application of the ordinance to the facts surrounding "The Little Pre-School" and its operation. We hereafter conclude that the pre-school ultimately falls within the definition of the ordinance.

■ With reference to the penalty imposed for violation of the ordinance, we find that Title 11 O.S.1971, § 672, provides authority for the enactment of ordinances "not inconsistent with the laws of the state," and authorizes the imposition of a fine, or imprisonment, or both for violation of such ordinances. Where courts of record are provided, the maximum punishment authorized is Three Hundred Dollars ($300.00), imposition of ninety (90) days imprisonment, or both. In cities without courts of record, the maximum punishment authorized is One Hundred Dollars ($100.-00), with thirty (30) days imprisonment or both. Also, in those cities which are provided both types of municipal courts, the ordinance may be made applicable in both such courts. We therefore find that the fine authorized for violation of the public accommodations ordinance is not in conflict with the penalty provided in 25 O.S. 1971, § 1506. That section provides District Court relief to be: "The court shall have power to grant such temporary relief or restraining order as it deems just, and to enter an order enforcing the order of the [Human Rights] Commission or restraining its violation . . . ." Section 1702 of the Act provides in part, further: "A political subdivision may adopt and enforce an ordinance prohibiting discrimination . . . ." The authority for enforcement of municipal ordinances is that found in 11 O.S.1971, § 672, supra. We therefore hold there is no conflict in the method of enforcement between the State Statutes and the Tulsa Public Accommodations Ordinance.

■ Defendant's third proposition asserts that a private pre-school for children is not a "Place of Public Accommodation,"

as defined by Section 526(D) of Ordinance 12415, of the City of Tulsa. It may be conceded that initially defendant's pre-school may not have fallen within the ordinance definition; however, because of some distribution of the school brochure, and because of defendant's failure to require a withdrawal of the Casa Alvarado Apartment newspaper advertisement, defendant permitted The Little Pre-School to become open for general public service, which brought the school within the definition of the ordinance.

Testimony of Mrs. Hogg was that she found the pre-school brochure [1] in her mail box, which caused her to inquire about enrollment of her child in the school. Likewise, notwithstanding the fact that defendant testified she did not give the apartment manager authority to make reference to the pre-school in the apartment advertisement, defendant also testified that she did nothing to cause a withdrawal of the advertisement.[2] Consequently, we are left to conclude, as the jury must have concluded, that defendant acquiesced in the advertisement of general publication, and thereby opened her school for public service.

The factual situation found in Fraser v. Robin Dee Day Camp, supra, is very similar to the facts of the instant case. Also, the New Jersey Statute is very similar to the Oklahoma Statute covering the same subject matter; and the Robin Dee Camp was advertised in the daily newspaper. Upon application of Fraser for the admission of his child, the school operator refused to enroll the child because he was black. The New Jersey Supreme Court held that the camp came within the definition of the statutes, notwithstanding that it was not one facility specifically mentioned in the definition of public accommodations. Under the facts presented in the instant case, we are bound to reach the same conclusions.

We are therefore of the opinion the judgment and sentence in Tulsa Municipal

Criminal Court of Record Case No. 153022, should be, and the same is therefore, affirmed.

BLISS, P. J., and BUSSEY, J., concur.

# come along
# and
# JOIN US

# at
# THE LITTLE

# PRESCHOOL

**APPENDIX—1**

Prosecution Exhibit—1
Page one, of two pages.

---

1. See Appendix 1, Prosecution Exhibit–1, pages one and two.

2. See Appendix 2, Prosecution Exhibit–2.

FEATURES:

- 5 Day Schedule
  Monday thru Friday

- 4 Age Groups
  Two Thru Five

- 3 Terms
  Fall—Spring—Summer

- 2 Sessions Daily
  Morning & Afternoon

- 1 Goal
  Your Child's Education

**ENROLL NOW**

# The Little Preschool

3104 SOUTH 99 EAST AVE. — 31st AND MINGO
PHONE: 622-9371
or
627-8962

Director
LYNDA VANTINE
University Graduate
Specializing in Early Childhood Education

Our curriculum is designed to help your child develop socially, emotionally, intellectually and physically. We provide a variety of learning experiences in each of these four important areas.

The following is a typical daily schedule:

- Greeting and Planning Period
- Formal Learning
- Outdoor Activities or Indoor Games
- Snack Time
- Free Play
- Story Time
- Music and Art

Other learning activities that your child will want to be a part of each week will be:

Our "Reading Readiness" Program
Science and Social Studies Activities
Cooking Projects
Variety of Arts and Crafts

APPENDIX—1

Prosecution Exhibit—1
Page two of two pages
(Inside fold of brochure)

**The Fun Place For Families!**

**(Pre-School, Too)**

Casa has stolen a bit of thunder from the expensive places by offering more without charging for it. See it soon. Total Electric living at Casa includes G.E. electric kitchens and individually controlled heat and air conditioning.

**Casa Alvarado**
628-1040    3131 S. Mingo Rd.

APPENDIX—2

Prosecution Exhibit—2
Newspaper Advertisement