134 N.J. Super. 277 (1975)
340 A.2d 660
CHARLES S. LIGE AND GILBERT H. FRANCIS, DIRECTOR, DIVISION ON CIVIL RIGHTS, RESPONDENTS,
v.
TOWN OF MONTCLAIR; MAYOR AND COMMISSIONERS, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1975.
Decided May 13, 1975.
*278 Before Judges HALPERN, CRAHAY and WOOD.
Mr. Joseph C. Dickson, Jr. argued the cause for appellants.
Mr. Raymond A. Noble, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Noble on the brief).
The opinion of the court was delivered by HALPERN, P.J.A.D.
Appellants appeal from the final order of the Division on Civil Rights (Division) which determined that appellants had engaged in discriminatory practices in their past hiring and promoting of policemen and firemen, in violation of N.J.S.A. 10:5-1 et seq., and the remedies imposed in connection therewith. Appellants have conceded that their past hiring and promotional practices violated the statute, so that we are concerned only with whether paragraphs 6 and 11 of the remedies imposed in the final order are valid.[1]
*279 This matter came before the Division by virtue of two amended complaints which were heard together. The first was filed by respondent Charles S. Lige, and the second by the Director of the Division. Lige, a black man, complained that appellants' hiring procedures were unlawfully discriminatory in that they had a disparate effect on black applicants. The Director's amended complaint, in addition to Lige's charges, asserted that appellants' promotion examination practices and procedures were discriminatory in that they had a disparate effect on minority groups. Neither of the amended complaints charged respondents with intentionally discriminating, rather that the testing processes used resulted in unlawful discrimination. However, the statutes here involved are concerned with the consequences of respondents' acts, not their intentions.
A brief synopsis of the undisputed proofs will portray the situation then existing in Montclair with respect to the issues at hand. By the 1970 census Montclair had a population of 44,055 persons. There were 11,985 black inhabitants comprising about 27% of the population. The fire department consisted of 86 whites and three blacks, the latter group comprising 3.4% of the department. The police department consisted of 119 men of whom 15 were blacks, or 14.5% of the department. The fire department chief, his seven deputies, nine of ten captains and 12 lieutenants were white. The chief of police, the two deputies, eight of nine captains, six *280 of seven lieutenants and seven of eight sergeants were white. It was stipulated that for the past ten years six vacancies had to be filled annually in the police department and three in the fire department, and the same number of vacancies was estimated for the foreseeable future.
We were advised at oral argument, and it appears to be undisputed, that Montclair is attempting to eliminate its former illegal hiring and promotion practices. We, therefore, turn to the narrow issue remaining, namely, whether the directives contained in paragraphs 6 and 11 of the final order, imposing a quota system for Montclair's future hirings and promotions in the police and fire departments, were valid.
We are fully cognizant of the difficult issue confronting us and the far-reaching effect an ultimate determination will have on all employers and employees in New Jersey. We are also aware that there is no direct precedent to guide us in New Jersey in construing the power of the Division in ordering this type of remedy under N.J.S.A. 10:5-1 et seq., and that under similar federal and foreign state statutes the decisions are in conflict. The most recent decision of the United States Supreme Court in De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed. 2d 164 (1974), failed to pass on the issues there presented which, although in a different context are, to an extent, analogous to those confronting us herein. However, Justice Douglas' dissenting opinion points up the complexity and far-reaching implications of the problem.
We start with the truism that the Federal and New Jersey State Constitutions proscribe invidious discrimination in hiring because of marital status, sex, race, color or creed. New Jersey's legislative intent to this end is clearly set forth in a variety of statutes[2] proscribing discrimination in all forms, and they must be construed to give the Division broad powers to insure and protect those constitutional *281 and legislative mandates. See Fraser v. Robin Dee Day Camp, 44 N.J. 480 (1965). But those powers must not be exercised in such a way as to discriminate against others.
The temptation is great to attempt to right the wrongs against many minorities (black, white, yellow, brown and red) which have unfortunately existed for generations, by letting a small number of the minority groups now obtain what others similarly situated will be denied. Once a quota system is imposed, as was done here, such numerical criteria will unquestionably result in the kind of invidious discrimination and injustice the quota system was designed to prevent.
The remedy here imposed may enable a few qualified members of a minority group to reach a point in numbers which the Division believes to be numerically correct based on a formula which uses percentages of minorities to population. But what minorities are we talking about? We pride ourselves as a nation on the "mix" of our people wherein history has proven our strength lies. But that "mix" is comprised not only of blacks, but of Poles, Jews, Scandinavians, Italians, Puerto Ricans, Hungarians, Cubans, Germans and others too numerous to list. It is one thing for the Division to find that a given person has been discriminated against and give him relief. See Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399 (1973). But when it fashions a remedy on a class quota basis, it leads to insoluble problems and piles discrimination on top of discrimination.
Our ultimate goal should be to eliminate all invidious discrimination based on sex, race, color or creed. Everyone should have an equal opportunity to obtain the job he or she seeks based on qualification for that job, because no other standard can survive in a free society. Courts should hesitate, in a given case, to rectify the wrongs of the past by a method of racial quotas which in itself invidiously discriminates against others  be they of the majority or minority. It would defeat the very purpose of N.J.S.A. 10: *282 5-1 et seq., for which the Division was created, namely, to safeguard all individuals from invidious discrimination because of sex, race, color or creed. Loving v. Virginia, 388 U.S. 1, 10, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).
We therefore hold that the Division, in fashioning the remedies contained in paragraphs 6 and 11 of its final order, has exceeded its statutory power and has violated the Federal and State Constitutions, and, therefore, said paragraphs are stricken from the final order. The matter is remanded to the Division with directions to examine appellants' present hiring and promotion practices in the police and fire departments to the end that appellants be compelled to remove all artificial, arbitrary and unnecessary barriers to employment when such barriers operate invidiously to discriminate on the basis of racial or other impermissible classification. The hiring procedures must be job-oriented and untainted by racial or cultural discrimination. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).
The final order is modified in accordance herewith. We do not retain jurisdiction.
NOTES
[1] 6. Future appointments to the Montclair Fire Department shall be conducted on the following basis: One (1) qualified minority applicant shall be selected for every one (1) qualified white applicant until the total number of minority officers on the Fire Department equals at least fifteen (15) persons.

Initial selection of minority candidates shall be made from the pool of qualified minority applicants which result from the re-evaluation process as set forth herein in paragraph 4 and 5 and shall continue until such pool is exhausted.
11. The Black applicants who are deemed qualified by this re-evaluation shall be so notified in writing. Fuutre promotions in the Montclair Police Department shall be made on the following basis.
One qualified Black applicant shall be promoted for every one qualified white applicant until 50% of those minority applicants deemed qualified by the re-evaluation have been promoted.
[2] e.g. N.J.S.A. 10:1-1 et seq.; N.J.S.A. 10:5-1 et seq.; N.J.S.A. 18A:38-5.1; N.J.S.A. 17:34-44.