ANDREW, J.T.C.
At issue in this state tax case is the appropriate construction of N.J.S.A. 54:39-28, an exemption provision in the Tax Upon Sale of Motor Fuels Act (hereinafter motor fuels act), N.J.S.A. 54:39-1 et seq. The precise issue, as framed by the parties, is whether plaintiff, Flexx Petroleum Corporation, may purchase motor fuel in this State “tax free” as a sale for export when plaintiff, itself, does not export the fuel but rather sells it to a third party in New Jersey who then exports the fuel.
Plaintiff, a wholesale dealer of motor fuels in this State, purchased motor fuel from its New Jersey suppliers and resold the fuel to other parties who exported the fuel out of this State. Plaintiff contends that the sales to it were “sales for exportation” and, accordingly, were exempt from motor fuels taxation under N.J.S.A. 54:39-28 of the motor fuels act. By contrast, defendant, the Director of the Division of Taxation argues that the exemption provision is applicable only when the exportation of the fuel is by the purchaser, not when the exporting party is the purchaser’s purchaser.
I.
A resolution of the question of statutory construction presented in this case requires a review of the statutory and regulatory framework structured by the Legislature and the Division of Taxation relative to the sale and use of motor fuels in this State. Judge Lasser of this court provided a comprehensive overview in N.Y. Fuel Terminal v. Taxation Div. Director, 10 N.J.Tax 26 (Tax Ct.1988). Much of what was said in that opinion will be recounted here.
During the assessment period at issue (May through August 1984), the motor fuels tax act imposed an excise tax of .08[1] a *4 gallon on every gallon of motor fuel sold or used in this State. N.J.S.A. 54:39-27. The Division of Taxation is responsible for regulating the motor fuels distribution chain in this State “from the manufacturer or importer to the ultimate user through licensing, record keeping, inventory and bonding requirements.” N.Y. Fuel Terminal, supra, 10 NJ.Tax at 28. The motor fuels act creates the following five categories of motor fuel licensees.
1. Distributor—generally a person who either imports motor fuel for use, distribution, storage or sale in this State or who produces, refines, manufactures, blends or compounds fuels and sells, uses, stores or distributes that fuel within the State. N.J.S.A. 54:39-3.
2. Gasoline jobbei—a specialized wholesale dealer who regularly makes 95% or more of his gasoline sales in New Jersey to not less than 25 retail dealers, fleet operators or other large consumers and who maintains fixed gasoline storage facilities in New Jersey with a capacity of 50,000 gallons or more. N.J.S.A. 54:39-6.1; N.J.A.C. 18:18-1.1.
3. Special License "A” dealei—a person who imports motor fuels into this State “for the purpose of selling same incidental to his principal business of buying and selling fuels in this State or for the purpose of consuming the same.” N.J.S.A. 54:39-64(a).
4. Wholesale dealer—a person who sells motor fuels to other persons who resell for consumption. N.J.S.A. 54:39-6.
5. Retail dealer—a person engaged in the retail sale of motor fuels. N.J.S.A. 54:39-5.
As revealed in N.Y. Fuel Terminal, supra, there are four tiers in New Jersey relative to the imposition of the motor fuels tax. At the first tier, which includes only distributors and gasoline jobbers, there is the importation, manufacture or buying, selling and trading of motor fuels prior to their entry into the distribution chain. The second tier involves the first sale in the distribution chain by a distributor or gasoline jobber to a wholesale dealer. The third tier involves the sale of motor fuel by the wholesale dealer to the retailer. The fourth and last tier involves sales by a retail dealer to the consumer. N.Y. Fuel Terminal, supra, 10 N.J.Tax at 30.
Judge Lasser’s opinion reveals that the motor fuels act contemplates that the motor fuels tax will ordinarily be first imposed when a distributor or gásoline jobber sells to a wholesaler in the second tier. Ibid. When a tax is paid at the second tier by a wholesale dealer, that dealer passes the cost on to the retailer at the third tier, who, in turn, passes it on to the consumer at the fourth tier. The motor fuels act does not *5 require the tax to be paid at the first tier, and thus, transactions between distributors or gasoline jobbers are on a “tax-free” basis. Specifically, N.J.S.A. 54:39-27.a. provides that “sales of fuel ... may be made by one licensed distributor or gasoline jobber to another licensed distributor or gasoline jobber free of [motor fuels] tax.”
Judge Lasser observed that “tax collection is more efficient and tax evasion more difficult when tax is first imposed at the time of transfer from a smaller number of licensed distributors and gasoline jobbers, rather than at the time of transfer from a substantially larger number of wholesale or retail dealers.” N.Y. Fuel Terminal, supra, 10 N.J.Tax at 31. The tax is imposed at the wholesale dealer or second tier level because there are fewer participants and transactions than at the third and fourth tiers. Ibid.

II.

With that overview in mind, I turn now to the facts of the present case which are relatively uncontroverted. Plaintiff, Flexx Petroleum Corporation, is a New Jersey corporation engaged in the business of buying and selling various motor fuels in this State as a wholesale dealer.[2]
Plaintiff purchased motor fuel during the period at issue (May 1984 through August 1984) from New Jersey licensed distributors such as B.P. Oil Corporation and Ashland Petroleum Company. These distributors were advised by plaintiff that the fuel would be exported, and thus, plaintiffs purchases were “tax free” pursuant to N.J.S.A. 54:39-28. Plaintiff, however, did not export the fuel itself but rather sold the fuel to Motion Motor Car Service (hereinafter Motion) and No Brands Petroleum, Inc. (hereinafter No Brands), two corporations engaged in the sale of motor fuels in the State of New York.
The Director concedes that the fuel purchased by plaintiff during the period at issue was actually exported either by *6 Motion or No Brands. Despite the eventual exportation of the fuel, the Director maintains that N.J.S.A. 54:39-28 does not permit plaintiff to purchase fuel “tax free” unless plaintiff, itself, exports the fuel, essentially, according to the Director, because the procedure followed by plaintiff is inconsistent with the design of the motor fuels act, permits easy avoidance of the tax and conflicts with N.J.S.A. 54:39-56.
The Director maintains that a purchaser such as plaintiff, in a sale for export, who does not export the fuel itself, must pay the tax and then sell the fuel with the tax included. Any subsequent purchaser who exports the fuel may then claim a refund pursuant to N.J.S.A. 54:39-66(l)(q) (2). The Director observes that if the motor fuels at issue had been purchased by plaintiff with the tax paid, Motion and No Brands, plaintiff’s purchasers, who actually exported the fuel, could then have filed for refunds of the tax.
Since the Director has conceded that the motor fuels at issue were actually exported, albeit by plaintiff’s purchaser or purchasers and not by plaintiff, the real question here is whether plaintiff’s purchases from its suppliers should have been “tax free” in the first instance as plaintiff contends or “tax paid” with the ultimate exporter seeking a tax refund from the Division as the Director maintains. If, in this case, plaintiff had paid the tax to its suppliers at the time it purchased the motor fuels, and then passed that tax cost on to its purchasers, the exporting purchasers could have applied for tax refunds pursuant to N.J.S.A. 54:39-66(l)(q) (2). Since plaintiff did not follow this procedure, as the Director contends it should have, there are now interest charges, penalties and many questions regarding the applicability of the refund provision for the tax liability. (The statute of limitations on refund claims is six months from the date of purchase, see N.J.S.A. 54:39-67.)
The Division’s final determination was issued on August 25, 1988 and assessed a deficiency in motor fuels tax for the months of May through August 1984 amounting to $393,- *7 508.72[3] to which was added a penalty of $118,052.63 and interest to September 15,1988 of $322,560.33. The total asserted deficiency was $834,121.68. Both parties have moved for summary judgment on the legal issue presented.
III.
In support of its position, plaintiff relies upon the plain language of N.J.S.A. 54:39-28, a comparable exemption provision in N.J.S.A. 54:39-65 (exemption for sales to governmental entities), the refund provision in N.J.S.A. 54:39-66, specifically, -66(l)(q) (2) and a number of principles of statutory construction.
The Director recites a number of contrasting rules of statutory interpretation in support of his contention, but essentially relies upon the position that N.J.S.A. 54:39-28 does not provide for “tax-free” sales for wholesale dealers who do not themselves export the fuel purchased, but rather, in those instances, N.J.S.A, 54:39-28 contemplates that the sales be “tax paid” with an eventual refund if the fuels are, in fact, subsequently exported.
The basis for the Director’s position lies in: (1) other provisions of the motor fuels act, specifically, (a) N.J.S.A. 54:39-27.a. which provides for “tax-free” sales only between licensed distributors and gasoline jobbers, (b) N.J.S.A. 54:39-65 which exempts sales of motor fuels to governmental entities, (c) the refund provision at N.J.S.A. 54:39-66(l)(q) (2), and (d) a criminal provision at N.J.S.A. 54:39-56 which makes it a misdemeanor to fraudulently obtain motor fuel for export and then fail to export the fuel without notifying the Director; (2) the argument that the exemption provisions at N.J.S.A. 54:39-28 and -65 were designed solely to avoid constitutional limitations on the State’s power to tax and should be construed narrowly and strictly; (3) the scheme of the motor fuels act to impose the tax at the top of the motor fuels distribution chain and to keep *8 track of the fuel until a taxable sale is made, and (4) the Director’s regulations.
A. The Various Statutes Implicated in the Interpretation of N.J.S.A. 54:39-28.
' N.J.S.A. 54:39-28 (hereinafter referred to as § 28) provides as follows:
Neither this chapter nor any of the provisions hereof shall apply to fuels when exported or sold for exportation from the State of New Jersey into any other State or country, but every person exporting or selling for export shall be required to report suck exports and sales to the [Director] in such detail as the [Director] shall require____ [Emphasis supplied]
N.J.S.A. 54:39-65 (hereinafter referred to as § 65) provides in relevant part as follows:
The provisions of [the motor fuels act] requiring the payment of taxes shall not be construed to apply to fuel sold to [various governmental entities] for official use of such governments in motor vehicles, motor boats, or other implements owned or leased by this State or any political subdivision or agency thereof, but every distributor shall report suck sales to the [Director] at such times and in such detail as the [Director] may require. [Emphasis supplied]
N.J.S.A. 54:39-66(l)(q)(2) (hereinafter referred to as § 66(l)(q)(2)) provides in relevant part as follows:
Any person:
(1) Who shall use any fuels as herein defined for any of the following purposes:
(q) Fuels previously taxed under this chapter and later exported or sold for exportation from the State of New Jersey to any other state or country; provided, proof satisfactory to the director of such exportation is submitted,
(2) Who shall have paid the tax for such fuels ... shall be reimbursed and repaid the amount of tax so paid____
N.J.S.A. 54:39-27.a. (hereinafter referred to as § 27.a.) provides in pertinent part:
... Under such regulations as the director may prescribe, sales of fuel and diesel fuel may be made by one licensed distributor or gasoline jobber to another licensed distributor or gasoline jobber free of suck tax____ [Emphasis supplied]
It is the Director’s position that the motor fuels act explicitly provides for only one type of “tax-free” sale and that is, *9 pursuant to § 27.a., a sale “by one licensed distributor or gasoline jobber to another licensed distributor or gasoline jobber____” The Director observes that only § 27.a. plainly states that sales between licensed distributors or gasoline jobbers are “free of such tax.” The Director then recites the differing language of § 28 which provides that neither the motor fuels act “nor any of the provisions hereof shall apply to fuels when exported or sold for exportation,” and the language used in § 65 which states that “[t]he provisions of [the motor fuels act] requiring the payment of taxes shall not be construed to apply to fuel sold to [governmental entities].”
The Director maintains that since the Legislature used language indicating “tax-free” sales in § 27.a. but different language in §§ 28 and 65, it is logical to assume that the Legislature intended to convey different meanings. The different meaning, according to the Director, is that only § 27.a. provides for “tax-free” sales initially, while § 28 and § 65 do not necessarily provide for “tax-free” sales, initially. The Director insists that neither a sale for export under § 28 nor a sale to a governmental entity under § 65 is “tax free” initially, but rather the two exemption provisions simply indicate that sales under § 28 and § 65 are not subject to tax, i.e., the sale contemplated under § 28 is one in which the tax is initially paid but then for which a refund of tax is provided. In support of this position the Director cites § 66(l)(q) (2) which provides for a refund when fuel which has been previously taxed is exported or sold for exportation.
In response, plaintiff contends that there is nothing in § 27.a. which either expressly or inferentially indicates that only sales between licensed distributors and gasoline jobbers are to be “tax free.” Plaintiff notes that § 65 specifically states that the provisions of the motor fuels act shall not “be construed to apply to fuel sold to [governmental entities],” and that § 28 specifically states that “neither this chapter nor any of the provisions hereof shall apply to fuels when exported or sold for exportation.”
*10 Plaintiff observes that there is nothing in either § 28 or § 65 which would require the payment of tax initially and then relegate the purchaser to a claim for a tax refund. As plaintiff cogently points out, both § 28 and § 65 speak only of the complete inapplicability of all of the provisions of the motor fuels act to either sales to governmental entities under § 65 or exports or sales for export under § 28. I agree.
First, there is nothing in § 27.a. that either expressly or inferentially limits “tax-free” sales to transactions between licensed distributors or gasoline jobbers. Section 27.a. simply provides that those types of sales shall be “free of such tax.” It goes no further. It does not exclude, nor does it seek to exclude, other tax-free or tax-exempt transactions that may be set forth in other provisions of the motor fuels act.
Moreover, giving the words employed by the Legislature in § 28 their generally accepted meanings, see N.J.S.A. 1:1-1, the taxing provisions of the motor fuels act simply do not apply to the events stated, and therefore, the transactions set forth must be tax-free initially.
Second, the Director’s argument that the refund provision in § 66(l)(q) (2) confirms his contention that the exemption provision in § 28 does not necessarily provide for “tax-free” sales initially is based on a false premise. That premise, as asserted by the Director, is that neither § 65 (sale to governmental entities) nor § 28 (exports or sales for export) contemplate “tax-free” sales initially, but rather contemplate “tax-paid” sales with the tax to be refunded upon the happening of the event which makes the fuel not subject to tax.
The fault lies in the fact that the exemption provision in § 65 must, of necessity, contemplate tax-free sales initially because there is no provision in § 66 for a refund. The Legislature, when it expanded the § 65 exemption provision in 1975, see L.1975, c. 314, § 1, specifically eliminated the refund provision for sales to governmental entities thus demonstrating that the § 65 exemption provision was intended to provide for “tax-free” transactions initially. See Camden City v. Taxation Div. Di *11 rector, 4 N.J.Tax 458, 463-464 (Tax Ct.1982) in which Judge Lario of this court, after a review of the legislative history of § 65 and § 66, concluded that “fuel sold to the State or any of its political subdivisions would be exempt from initial payment of tax” under § 65.
The exemption language in § 65 is not significantly different from § 28. Thus, the Legislature must also have intended tax-free sales initially for exports or sales for export. The need for a refund provision, even though there is a provision of tax-free sales initially, is readily understandable. There may be transactions that are not for export initially, and thus, tax could, in fact, be paid. Subsequently, however, the fuel could be exported or sold for exportation and thus, the need for a refund procedure arises.
The most persuasive argument advanced by plaintiff in support of its construction of § 28 rests on a 1950 legislative amendment which, as urged by plaintiff, “demonstrates a clear legislative intention to exempt from tax, sales for exportation by nondistributors such as [plaintiff].” Plaintiff notes that the Legislature enacted L. 1950, c. 144, § 7 which amended § 28. The amendment is reflected by the deletion of the bracketed portion and addition of the underscored portion as follows:
Neither this chapter nor any of the provisions hereof shall apply to fuels when exported or sold for exportation from the State of New Jersey [to] into any other State or country, but every [distributor] person exporting or selling for export shall be required to report such exports and sales to the commissioner in such detail as the commissioner shall require____[N.J.S.A. 54:39-28; emphasis supplied to reflect amending language]
Prior to the amendment of § 28, only licensed distributors[4] were permitted to export or sell fuel for export on a tax-free basis. This is clear from the fact that only distributors were required to report such exports and sales to the Director. After the amendment, however, “every person exporting or selling for export,” which without doubt included a wholesale *12 dealer like plaintiff was required to report such exports and sales to the Director. See N.J.S.A. 54:39-4. Clearly, by the 1950 amendment a wholesaler, like plaintiff, was permitted to make a sale for exportation to which the motor fuels act was not applicable. Stated differently, a wholesale dealer, like plaintiff, was permitted to make tax-free sales for exportation. This conclusion logically flows from the 1950 amendment to § 28.
To accept the Director’s construction of § 28 would mean that only distributors could sell for exportation on a tax-free basis. That would mean that the 1950 amendment was meaningless or superfluous and would clearly conflict with the principle of statutory interpretation that a court must avoid any interpretation “that will render any part of a statute inoperative, superfluous or meaningless.” See Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984). In this case not only would the legislative language be rendered meaningless but it would attribute to the Legislature a deliberate attempt to make a meaningless change.
Inasmuch as the amendment permits sales for exportation by a “person,” such as a wholesale dealer, like plaintiff, defendant’s interpretation that § 28 only permits “tax-free” sales when a wholesaler, like plaintiff, purchases fuel from a distributor and then immediately exports the fuel is just not reasonable.
B. N.J.S.A. 54:39-56.
The Director contends that N.J.S.A. 54:39-56[5] (§ 56) supports his construction of § 28. Section 56 makes it a *13 misdemeanor for a person to obtain fuel for export, “through false statement, trick or device,” and then fail to export the fuel and notify the Director of the failure to export. The Director asserts that, in this case, plaintiff, albeit without the requisite criminal intent, obtained fuel for export, failed itself to export the fuel, and did not notify the Director.
Although he does not allege that plaintiff had the required criminal intent to bring its actions within the scope of § 56, the Director asserts that the Legislature could not have intended to exempt from tax those very activities which, without criminal intent, are rendered criminal under § 56 with the requisite criminal intent. Stated somewhat differently, the Director maintains that plaintiffs interpretation of § 28 is inconsistent with the purpose of § 56 which is to prohibit the resale in this State of fuel purchased for export, a result the Legislature could not have intended.
In response, plaintiff asserts that § 56 does not require that the immediate purchaser export the fuel anymore than § 28 requires exportation by the immediate purchaser as a prerequisite to a tax-free sale. In other words, plaintiff contends that § 56 does not, by its plain language, require a purchaser, like plaintiff, to, itself, export the fuel obtained for export. Moreover, observes plaintiff, a criminal statute, as is § 56, must be strictly construed, and thus, one would not be permitted to add to the statutory language the requirement that the purchaser must himself export the fuel obtained for export.
I find that I am again in agreement with plaintiffs position for two reasons. First, it enables one to read § 28 and § 56 consistently. It is fundamental that a court, when faced with two apparently inconsistent statutes, must construe them *14 to be in harmony if such construction is reasonably possible. Carroll v. Caufield, 80 N.J.Super. 472, 477, 194 A.2d 35 (Law Div.1963); 2A Sutherland, Statutory Construction (4 ed. 1973) § 51.02 at 453. Since I am in agreement with plaintiff that § 28 does not require, as a condition to a “tax-free” sale, that the fuel purchased by plaintiff must be exported by plaintiff itself, I also agree with plaintiff that § 56 does not require exportation of motor fuel by the immediate purchaser in order to avoid a violation of the terms of § 56.
Second, if § 28 and § 56 are to be read in pari materia and there appears to be an irreconcilable conflict between them, the interpretation of § 28 offered by plaintiff must control because it is based on a 1950 statutory amendment to § 28. See A. 1950, c. 144, § 7. Inasmuch as § 56 was enacted in 1935 and has gone unamended since that time, the amended version of § 28, also originally enacted in 1935, is the latest expression of the Legislature, and thus, must control. See 2A Sutherland, Statutory Construction, supra, § 51.02 at 453-454 and § 51.03 at 469.
C. The Scheme of the Motor Fuels Act.
The Director also argues that the scheme of the motor fuels act supports his construction of § 28. The Director contends that the design of the motor fuels act is twofold. First, the act is designed to impose the tax at the top of the distribution chain, i.e., the first sale from a licensed distributor to a wholesaler, or upon the taxable use of the fuel by a distributor. Since there are a limited number of licensed distributors, the scheme simplifies tax collection and makes tax evasion more difficult.
Second, the Director contends that the motor fuels act establishes a detailed system for keeping track of motor fuels in this State by the requirement for: (1) licensing the various market participants, (2) the maintenance of particular records, and (3) filing with the Director various reports and returns. It is the Director’s position that the purpose of this elaborate scheme is not advanced by plaintiff’s construction of § 28, and thus, *15 plaintiff’s interpretation could not have been within the contemplation of the Legislature.
The Director argues that plaintiff’s interpretation would simply create another category of “tax-free” sales and would cause the Division of Taxation to lose track of the fuel because plaintiff, as a wholesaler, has no reporting requirements under § 28.[6] The Director insists that there are no regulatory reporting requirements imposed on wholesaler dealers, such as plaintiff, because the motor fuels act does not contemplate multiple tax-free sales for export. Without reporting requirements, the Director would not have the capability of tracking the fuel to the ultimate consumer or the point of export if multiple sales are permitted to be made tax-free under § 28.
The Director also notes that, in furtherance of this scheme, he has adopted regulations that make it clear that § 28 permits “tax-free” sales for export only when the immediate purchaser exports the fuel, otherwise the Director maintains that the tax must be paid and a refund sought when the fuel is ultimately exported.
In response, plaintiff observes that the source of the Director’s statutory scheme argument is not the motor fuels act, itself, but rather the regulatory scheme created by the Director. Plaintiff contends that the Director’s regulatory scheme, which is designed to simplify the administration of the motor fuels act, cannot override the language employed by the Legislature in § 28. Plaintiff also notes that the reason there is no formal reporting requirement for sales for export by persons such as plaintiff is that the Director has not adopted, pursuant to § 28, a regulation which would require wholesale dealers, like plaintiff, to report such sales for export. In light of the specific language employed by the Legislature in § 28 *16 and the specific change to § 28 adopted by the Legislature at A. 1950, c. 144, § 7,1 find plaintiffs arguments very persuasive.
It has become well settled that the Director’s interpretation of a taxing provision carries “great weight” and “is entitled to prevail, as long as it is not plainly unreasonable.” See Smith v. Director, Div. of Taxation, 108 N.J. 19, 25-26, 527 A.2d 843 (1987). It is just as clear, however, that the Director’s interpretation cannot make valid that which is clearly invalid. Gladden v. Pub. Emp. Retirement System Trustee Bd., 171 N.J.Super. 363, 374, 409 A.2d 294 (App.Div.1979). “It is also well settled that [administrative regulations ... cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute.” N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm., 82 N.J. 57, 82, 411 A.2d 168 (1980).
Based on a fair reading of § 28, as originally enacted and as amended in 1950,1 am convinced that the Director’s interpretation is just not reasonable. Neither the Director’s interpretation nor his regulations can “add to a statute something which is not there____” Service Armament Co. v. Hyland, 70 N.J. 550, 563, 362 A.2d 13 (1976); Kingsley v. Hawthorne Fabrics, 41 N.J. 521, 528, 197 A.2d 673 (1964). The 1950 amendment to § 28 clearly contemplates that wholesale dealers such as plaintiff may make tax-free sales for export. The fact that there is, at present, no reporting requirement, as also contemplated by § 28, can be readily cured if the Director adopts a regulation requiring such reports. The adoption of such a reporting requirement for wholesale dealers will enable the Director to track motor fuels sold tax free under § 28 to the point of export. It appears that the Legislature contemplated such a reporting requirement when it adopted the 1950 amendment to § 28.
D. Constitutional Limitation of the Power to Tax.
The Director also seeks to support his construction of § 28 by asserting that § 28 was a legislative reflection of a perceived lack of power to constitutionally tax particular sales under the Commerce Clause of the United States Constitution. Although *17 the Director candidly admits that there is no legislative history for § 28, he suggests an attempt to tax a sale of motor fuels for immediate export by the purchaser would have fallen under a Commerce Clause prohibition, and thus, the Legislature only intended to provide “tax-free” sales on those specific occasions. The Director further suggests that there is no reason to believe that the Legislature intended to provide for “tax-free” sales in those instances when a purchaser, such as plaintiff in this case, resold fuel to another purchaser who exported the fuel, because this latter type of transaction could be subjected to tax without violating Commerce Clause prohibitions.
Plaintiff, in response, asserts that Commerce Clause limitations could not have been the Legislature’s sole motivation for § 28 because § 28 exempts from tax more than was necessary under the Commerce Clause limitations at the time of enactment. Plaintiff observes that the Legislature need not have exempted “sales for exportation” because it could well have assumed, under existing decisional law, that it had the power within Commerce Clause restraints to tax such sales.
I am not persuaded by the arguments of either party on this point because both are engaging in pure speculation and conjecture as to the motivating force or forces behind the enactment of § 28. Absent some indication in the statutory language employed in § 28, or in its legislative history, there is no way to know what motivated the Legislature in its adoption of § 28.
In this regard, I note parenthetically that, whenever the Legislature had a concern with regard to the limits of its taxing power under the United States Constitution, it articulated that concern specifically. For example, in N.J.S.A. 54:40A-10, a part of the Cigarette Tax Act, the Legislature expressly provided that, “[n]o tax imposed by this act shall be levied upon cigarettes or the sale of cigarettes which this State is prohibited from taxing under the Constitution or the statutes of the United States____” Also, in the Sales and Use Tax Act, the Legislature expressly referred to a perceived constitutional limitation by providing that “[rjeceipts from sales not within *18 the taxing power of this State under the Constitution of the United States are exempt from the tax imposed under the Sales and Use Tax Act.” See N.J.S.A. 54:32B-8.10.
E. Subsequently Proposed Legislation.
Although both parties observe that pending and unenacted legislation is not proof of prior legislative intention, they both assert that the introduction of Senate Bill 1410 (1986) and Senate Bill 363 (1988) support their respective interpretations of § 28. Not much discussion on this point by this court is required since our Supreme Court expressed it succinctly in Fraser v. Robin Dee Day Camp, 44 N.J. 480, 210 A.2d 208 (1965) when it remarked:
Assuredly, the mere introduction of a bill some years after the passage of the original enactment can in no way be instructive in determining the intent of the Legislature which enacted the original law. [at 486, 210 A.2d 208]
IV.
There is an additional issue presented by plaintiff in the second count of its complaint with regard to its claims for refund that requires brief discussion.
As related by the Director, in 1985, plaintiffs suppliers were notified by the Division that they were not to sell gasoline to plaintiff for export on a “tax-free” basis. As such, plaintiff was required to pay the tax to its suppliers on its purchases and then file claims for refund if and when plaintiff exported the fuel. To date, plaintiff has submitted refund claims to the Division which total $75,420.31. While admitting that plaintiff has appropriately documented its claims for a refund in the total amount of $69,750.31, the Director maintained that it did not have to refund that amount because of plaintiff’s outstanding assessment which greatly exceeded the claimed refunds.
The Director conceded, however, that if he did not prevail on the primary issue in this case that the amount of $69,750.31 would be paid to plaintiff. The balance of $5,670 (difference between plaintiff’s claim of $75,420.31 and the Director’s concession of $69,750.31) according to the Director, has not been properly documented by plaintiff. I assume that plaintiff can *19 furnish the appropriate documentation and the Director will then pay the balance of the refund claim. If the adequacy of the documentation becomes an issue, plaintiff can maintain an action in this court after the claim is denied by the Director.
The Clerk of the Tax Court is directed to issue a judgment cancelling the Director’s deficiency assessment.

Effective July 1, 1988, the tax was increased to .105 a gallon. See L. 1987, c. 460, § 7.

Plaintiff also holds a New Jersey special "B" license, N.J.S.A. 54:39-64(b), which allows plaintiff to purchase fuel, other than gasoline, tax free and then to remit the tax if the fuel is used or sold for use to operate motor vehicles. Additionally, plaintiff holds a New York State distributor’s license.

There is a minor disagreement between the parties as to plaintiffs total purchases of fuel in July and August 1984. Both parties anticipate that this discrepancy can, if necessary, be readily resolved by the parties once a determination is made by this court on the legal issue presented in this case.

Gasoline jobbers were permitted to sell motor fuels on a “tax-free” basis to other distributors or gasoline jobbers pursuant to § 27.a. beginning in 1969. See L. 1968, c. 420, §§ 10-13.

N.J.S.A. 54:39-56 provides in full as follows:
Any person, firm, partnership, association or corporation or any officer or agent thereof who, through false statement, trick or device, or otherwise, obtains fuel for export and fails to export the same or any portion thereof, or causes said fuel or any portion thereof not to be exported, or who diverts said fuel or any portion thereof, or who causes to be diverted from interstate or foreign transit begun in this state, or who unlawfully returns said fuel or any part thereof to this state and sells or uses said fuel or any *13 part thereof in this state, or causes said fuel or any part thereof to be used or sold in this state, and fails to forthwith notify the [Director] of this act, and any distributor or other person who conspires with any person, firm, partnership, association or corporation, or any officer or agent thereof, to do the things hereinabove mentioned with intent to avoid any taxes imposed by this chapter, shall be guilty of a misdemeanor.

It is appropriate, at this point, to note that wholesale dealers, unlike distributors and gasoline jobbers, have no reporting requirement under § 28 because the Director has no regulations requiring wholesale dealers to report sales for export.