737 A.2d 683 (1999)
325 N.J. Super. 3
Mikal WAZEERUD-DIN, Plaintiff-Appellant,
v.
The GOODWILL HOME AND MISSIONS, INC. and Kenneth Thomas, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1998.
Decided September 29, 1999.
*684 Andrew Dwyer, for plaintiff-appellant (Dwyer & Ellis, attorneys; Mr. Dwyer, on the brief).
Richard C. Cooper, Newark, for defendants-respondents (McCarter & English, attorneys; Mr. Cooper, of counsel and on the brief; Brenda C. Liss, Newark, on the brief).
Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.
*685 The opinion of the court was delivered by SKILLMAN, J.A.D.
The question presented by this appeal is whether the Discipleship Program conducted by defendant Goodwill Home and Missions, Inc. (Goodwill Missions), which seeks to free participants from drug addiction and other addictive behavior primarily by instruction in the Christian religion and attendance at Christian devotional services, is a "place of public accommodation" subject to the provisions of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42.
Goodwill Missions is a religious society which engages in Christian evangelical teaching and provides assistance to needy persons. It operates social service programs which provide meals and shelter to needy men; recreational and educational opportunities to deprived children; food to residents of low income housing projects; health services; and gifts to poor children at Christmas time. Assistance is made available under these programs without regard for the religious affiliation or views of the recipients.
The particular Goodwill Missions program involved in this appeal, the Discipleship Program, is a nine-month residential program that provides participants with intensive religious instruction designed to free them from addictive life patterns. The essential premise of the program, as described by the Pastor of Goodwill Missions, is that "addiction is an outward manifestation of inward sin" and consequently the "chains of addiction can be broken" by "acceptance of Jesus Christ as Savior and Lord of one's living." The core of the program is religious instruction, which includes Bible classes four days per week and supervised individual Bible study five days per week, and attendance at religious services, which includes at least six morning and four evening devotional services per week. It also includes non-religious educational instruction, such as reading, elementary mathematics and computer skills, and vocational training. The program does not involve any form of medical treatment. It has 90 to 100 participants at any one time.
Because the essential premise of the Discipleship Program, as described by the Goodwill Missions Pastor, is that participants can free themselves from addiction by "turning to Jesus Christ as their personal savior, redeemer and Lord who breaks the power of sin," Goodwill Missions admits into the program only persons who are "open to acceptance of the lordship of Jesus Christ." The Pastor indicated that one of the reasons for this restriction is that the participants "live, learn and work together and depend upon mutual support." Consequently, "[a]n individual who is unwilling to accept the principles of the program can be disruptive to the other residents in the Discipleship Program and can negatively affect their ability to free themselves of addiction." Non-Christians are admitted only if they are "open to considering the claims of Christ." Since 1990, 372 of the men entering the program have identified themselves as Christian, 51 as Muslim, 5 as Jewish and 302 as having no affiliation.
Plaintiff Mikal Wazeerud-Din is a Muslim. Upon his discharge from Marlboro Psychiatric Hospital, plaintiff was driven to Goodwill Missions, where he was interviewed by the Coordinator of Men's Ministries, defendant Kenneth Thomas. According to plaintiff, he was told at this interview that his "religion would be in conflict with the [Discipleship] program." However, Thomas stated that plaintiff's application was rejected because he did not express a sincere willingness to consider the teachings of Jesus Christ or to abide by the Discipleship Program's rules and guidelines.
Plaintiff subsequently filed a complaint in the Chancery Division which alleged that Goodwill Missions is a "place of public accommodation" subject to the provisions *686 of the LAD and that it had discriminated against him on the basis of religion or creed by denying his application for admission into the Discipleship Program. The complaint named both Goodwill Missions and Thomas as defendants. Plaintiff sought an order compelling defendants to admit him into the Discipleship Program as well as compensatory and punitive damages. The trial court denied plaintiff's application for a preliminary injunction, which we affirmed in an unreported opinion. Wazeerud-Din v. Goodwill Home & Missions, Inc., No. A-1995-96T1F (May 8, 1997).
After the completion of discovery, the parties filed cross motions for summary judgment. The trial court concluded that the Discipleship Program is not subject to the LAD because: (1) it is a religious program which is not covered by the basic definition of a "place of public accommodation"; (2) it is expressly excluded from the definition of a "place of public accommodation" as an "educational facility operated or maintained by a bona fide religious or sectarian institution;" and (3) it is also expressly excluded from the definition as an "institution ... which is in its nature distinctly private." Since the court concluded that the Discipleship Program is not a place of public accommodation under the LAD, it did not reach defendants' alternative argument that subjecting Goodwill Missions' admissions practices to government regulation would violate its First Amendment rights to free exercise of religion and freedom of association.
The LAD provides that "[a]ll persons shall have the opportunity ... to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation,... without discrimination because of ... creed...." N.J.S.A. 10:5-4. The LAD also provides that "[i]t shall be ... an unlawful discrimination ... [f]or any owner ... of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, ... on account of the ... creed ... of such person...." N.J.S.A. 10:5-12(f)(1). The definitional section of the LAD states that "`[a] place of public accommodation' shall include, but not be limited to" the public accommodations specifically set forth therein. N.J.S.A. 10:5-5(l). It further provides that "[n]othing herein contained shall be construed to include or to apply to any institution, bona fide club, or place of accommodation, which is in its nature distinctly private; nor shall anything herein contained apply to any educational facility operated or maintained by a bona fide religious or sectarian institution...." Ibid.
We conclude that the Discipleship Program is not covered by the basic definition of a "place of public accommodation" under the LAD because it is a religious program. We also conclude that the Discipleship Program is excepted from the definition of "place of public accommodation" because it is an "educational facility operated or maintained by a bona fide religious or sectarian institution." Since the dismissal of plaintiff's complaint may be affirmed on either of these alternative grounds, there is no need to address defendants' additional arguments that the Discipleship Program "is in its nature distinctly private" and that an interpretation of the LAD which required plaintiff's admission into the Discipleship Program would violate Goodwill Missions' First Amendment rights of free exercise of religion and freedom of association.
The LAD defines a "place of public accommodation" by illustration; it states that the places subject to the law
shall include, but not be limited to: any tavern, roadhouse, hotel, motel, trailer camp, summer camp, day camp, or resort camp, whether for entertainment of transient guests or accommodation of those seeking health, recreation or rest; any producer, manufacturer, wholesaler, distributor, retail shop, store, establishment, or concession dealing with goods *687 or services of any kind; any restaurant, eating house, or place where food is sold for consumption on the premises; any place maintained for the sale of ice cream, ice and fruit preparations or their derivatives, soda water or confections, or where any beverages of any kind are retailed for consumption on the premises; any garage, any public conveyance operated on land or water, or in the air, any stations and terminals thereof; any bathhouse, boardwalk, or seashore accommodation; any auditorium, meeting place, or hall; any theatre, motion-picture house, music hall, roof garden, skating rink, swimming pool, amusement and recreation park, fair, bowling alley, gymnasium, shooting gallery, billiard and pool parlor, or other place of amusement; any comfort station; many dispensary, clinic or hospital; any public library; any kindergarten, primary and secondary school, trade or business school, high school, academy, college and university, or any educational institution under the supervision of the State Board of Education, or the Commissioner of Education of the State of New Jersey.

[N.J.S.A. 10:5-5(l).]
"Other accommodations, similar in nature to those enumerated, were also intended to be covered." Fraser v. Robin Dee Day Camp, 44 N.J. 480, 486, 210 A.2d 208 (1965). We believe that the converse of this proposition is equally valid; the Legislature could not reasonably have intended coverage under the LAD to extend to accommodations and facilities which are fundamentally dissimilar from the ones enumerated in N.J.S.A. 10:5-5(l).
Although churches, seminaries and religious programs are not expressly excluded from the definition of "place of public accommodation," the Legislature clearly did not intend to subject such facilities and activities to the LAD. None of the enumerated examples of "public accommodations" set forth in N.J.S.A. 10:5-5(l) are similar in any respect to a place of worship or religious training. Furthermore, a church or other religious institution does not ordinarily solicit the general public's participation, which is "a principal characteristic of public accommodations." Dale v. Boy Scouts of Am., 160 N.J. 562, 589, 734 A.2d 1196 (1999). Instead, a religious institution's solicitation of participation in its religious activities is generally limited to persons who are adherents of the faith or at least receptive to its beliefs. The conclusion that religious facilities and activities are not public accommodations is also supported by the Division on Civil Rights' long-standing position, as expressed in an affidavit which its former director submitted in connection with other litigation, that the LAD does not "regulate or control religious worship, beliefs, governance, practice or liturgical norms...." Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1461 (3d Cir.1994), cert. denied, 520 U.S. 1155, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997). Moreover, any attempt to regulate a religious institution's policies concerning participation in its religious activities would raise serious constitutional questions. See Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); compare Dale, supra, 160 N.J. at 607-18, 734 A.2d 1196. Consequently, in the absence of a clear expression of legislative intent to extend the coverage of the LAD into this domain, N.J.S.A. 10:5-5(l) should be construed to avoid governmental entanglement with religion in order to preserve its constitutionality. See Market St. Mission v. Bureau of Rooming & Boarding House Standards, 110 N.J. 335, 341, 541 A.2d 668, appeal dismissed, 488 U.S. 882, 109 S.Ct. 209, 102 L.Ed.2d 201 (1988).
We are satisfied that the Discipleship Program is basically a program of religious teaching and worship and thus not a public accommodation. It is not a conventional drug treatment program because it does not provide medical treatment or secular psychological counseling. Rather, its *688 essential premise is that drug addiction, alcoholism, compulsive gambling and sexual addictions are "outward manifestations of inward sin." Consequently, to break the "chains of addiction," a person must accept "Jesus Christ as Savior and Lord of one's living." Consistent with this view of addiction, the Discipleship Program devotes substantial time to study of the Christian religion and participation in Christian worship services. Moreover, because Goodwill Missions' premise is that a person can be freed from addiction through the Discipleship Program only by acceptance of Christian beliefs, it only accepts applicants who express a sincere receptivity to the tenets of the religion. Therefore, the Discipleship Program is a religious program rather than a public accommodation.
The Discipleship Program is not transformed into a "hotel," "eating house" or "clinic" within the intent of N.J.S.A. 10:5-5(l) simply because it provides shelter, food and health services to participants. A convent or seminary also furnishes these basic human needs to its residents, but that does not make it a public accommodation which must allow non-believers to avail themselves of its facilities. Similarly, the Discipleship Program does not lose its essentially religious nature merely because it tends to the temporal needs of participants.
The absence of any direct governmental support is further evidence that the Discipleship Program is not a place of public accommodation. See Dale, supra, 160 N.J. at 589-90, 734 A.2d 1196. Although some participants in the Discipleship Program transfer their food stamps to the program to help defray their maintenance expenses, and others contribute $90 per month from their Supplemental Security Income benefits, this does not constitute public funding of the Discipleship Program. Instead, it is the participants themselves who make payments to the program out of resources they have obtained from the government. Indeed, in view of its essentially religious nature, any direct governmental funding of the Discipleship Program would raise serious constitutional problems. See Witters v. Washington Dept. of Servs. for the Blind, 474 U.S. 481, 106 S.Ct. 748, 88 L.Ed.2d 846 (1986).
Plaintiff argues that because Goodwill Missions provides other social services without regard for the religious affiliation or views of recipients, it is also required to disregard the religious views of applicants for the Discipleship Program. In support of this argument, plaintiff relies upon Frank v. Ivy Club, 120 N.J. 73, 104, 576 A.2d 241 (1990), cert. denied, 498 U.S. 1073, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991), which held that eating clubs at Princeton University are public accommodations because they have "an integral and symbiotic relationship" with Princeton University, which is a place of public accommodation. However, this case is the converse of Frank. Unlike Princeton University, Goodwill Missions is not a public accommodation, but rather an evangelical teaching organization. Consequently, even if some of the Goodwill Missions' other activities were considered public accommodations because they are secular in nature (an issue we find unnecessary to decide), its essential mission is religious indoctrination and worship, and the Discipleship Program is directly related to this mission. Goodwill Missions is similar in this respect to a church which furnishes food or social services to the needy without consideration of the recipients' religions. By offering such beneficence, a church does not become a public accommodation which must allow anyone to participate in its religious activities.
Even if the Discipleship Program were similar to the accommodations enumerated in N.J.S.A. 10:5-5(l), it nevertheless would be excluded from the definition of a "place of public accommodation" because it is an "educational facility operated or maintained by a bona fide religious or sectarian *689 institution." We have previously determined that Goodwill Missions is a religious institution. Goodwill Home & Missions, Inc. v. Garwood Borough, 281 N.J.Super. 596, 602, 658 A.2d 1330 (App.Div.1995). Consequently, the only question that needs to be decided to determine the applicability of this exception is whether the Discipleship Program is an "educational facility."
Our courts have held that the term "educational" within the definition of "place of public accommodation" under the LAD should be broadly construed. See Dale, supra, 160 N.J. at 592-93, 734 A.2d 1196 (Boy Scouts); National Org. for Women v. Little League Baseball, Inc., 127 N.J.Super. 522, 531, 318 A.2d 33 (App.Div.), aff'd o.b., 67 N.J. 320, 338 A.2d 198 (1974) (Little League baseball); Fraser v. Robin Dee Day Camp, supra, 44 N.J. at 487, 210 A.2d 208 (day camp). Moreover, even though a program may be educational in nature without constituting an "educational facility," see Dale, supra, 160 N.J. at 601-02 n. 10, 734 A.2d 1196, we are satisfied that the Discipleship Program is an "educational facility" within the intent of N.J.S.A. 10:5-5(l). Participants are required to attend Bible classes four days per week and to engage in individual, supervised Bible study five days per week. They also are required to participate in an educational program to improve their reading, mathematics and communications skills and to develop a familiarity with computers and computer technology. In addition, participants are offered the opportunity for vocational training to enable them to obtain employment when they complete the program. Therefore, even though the essential goal of the Discipleship Program is to free participants from addiction, it pursues this goal primarily by means of religious and secular education, which warrants the conclusion that it is an "educational facility."
Plaintiff argues that the term "educational facility" only applies to the educational facilities specifically included in the enumerated list of accommodations in the LAD's definition of a "place of public accommodation,"that is, "any kindergarten, primary and secondary school, trade or business school, high school, academy, college and university, or any educational institution under the supervision of the State Board of Education, or the Commissioner of Education of the State of New Jersey." N.J.S.A. 10:5-5(l). Because the Discipleship Program is not licensed or supervised by the State Board of Education or Commission on Higher Education, or accredited by any accrediting agency as an educational institution or facility, plaintiff contends that it does not fall within the enumerated list of educational institutions and thus cannot qualify as an "educational facility" within the intent of this exception from the definition of "place of public accommodation." [1]
However, the paradigmatic examples of educational facilities operated by *690 religious institutions, such as Sunday schools, Hebrew schools and seminaries, are not subject to governmental supervision or accreditation by outside agencies.[2] Furthermore, there is no logical reason why the educational facilities specifically excluded from the definition of "place of public accommodation" should be parallel to those specifically included. Because the public accommodations enumerated in N.J.S.A. 10:5-5(l) are illustrative only, the Legislature undoubtedly was concerned that the LAD could be construed to apply not only to religious educational facilities that would fall within the enumerated list but also to ones omitted from that list. To avoid this possibility, the Legislature specifically excepted all educational facilities operated by religious institutions from the public accommodations provisions of the LAD. Therefore, this exception applies both to elementary and high schools operated by religious institutions under the supervision of the State Board of Education and to purely religious schools which are not subject to any form of governmental regulation.
In sum, because the Discipleship Program is fundamentally a program of religious teaching and worship, it does not fall within the basic definition of a "place of public accommodation." Moreover, because the program pursues its goal of freeing participants from addiction primarily by means of religious and secular education, it is expressly excepted from the definition of a "place of public accommodation" as an "educational facility operated or maintained by a bona fide religious or sectarian institution."
Affirmed.
NOTES
[1] The only authorities plaintiff cites in support of this argument are a forty-four year old opinion of the Attorney General, Opinions of Att'y Gen. of N.J. (1954-55), Formal Op. No. 42 of 1955, and a case interpreting exemptions from the state inheritance tax, Board of Nat'l Missions of the Presbyterian Church in the United States v. Neeld, 9 N.J. 349, 88 A.2d 500 (1952). An Attorney General's opinion has no precedential weight in this court, and to the extent Opinion No. 42 is inconsistent with this decision, it is disapproved. The National Missions case involved the interpretation of sections of the former Transfer Inheritance Tax Act, N.J.S.A. 54:33-1 to N.J.S.A. 54:37-8, which distinguished between "religious" institutions, which were granted a partial exemption from the inheritance tax, and "educational" institutions, which were granted a total exemption. The Court held that religious organizations which operated missions, hospitals, dispensaries, community centers and schools should be classified as "religious" rather than "educational" institutions. 9 N.J. at 354, 88 A.2d 500. The exception from the definition of "place of public accommodation" does not draw a similar distinction between "religious" and "educational" institutions. To the contrary, it provides an exception to "educational facilities" operated by "religious institutions."
[2] However, if a seminary or other religious educational institution decides to confer bachelor degrees upon its graduates, it must obtain a license from the Commission on Higher Education. N.J.S.A. 18A:68-2, -6; see New Jersey State Bd. of Higher Educ. v. Board of Dirs. of Shelton College, 90 N.J. 470, 477, 448 A.2d 988 (1982).