**OCEAN GROVE CAMP MEETING ASSOCIATION OF THE UNITED METHODIST CHURCH, Appellant**

v.

**J. FRANK VESPA–PAPALEO, in his official capacity as Director of the New Jersey Division on Civil Rights, Office of the Attorney General of New Jersey.**

Nos. 07–4253, 07–4543.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 21, 2008.

Filed July 15, 2009.

Michael D. Behrens, Esq., Messina Law Firm, Brian W. Raum, Esq., Alliance Defense Fund, Scottsdale, AZ, for Appellant.

Charles S. Cohen, Esq., Office of Attorney General of New Jersey, Newark, NJ, for J. Frank Vespa–Papaleo.

Before: BARRY and CHAGARES, Circuit Judges, and RESTANI,* Judge.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Ocean Grove Camp Meeting Association of the United Methodist Church ("the Association") appeals the District Court's dismissal of its case against J. Frank Vespa– Papaleo, Director of the New Jersey Division on Civil Rights ("DCR"). The Association brought this suit, asserting that the DCR applied the New Jersey Law Against Discrimination ("LAD") in a manner that violated the Association's First Amendment rights when the DCR accepted and investigated discrimination complaints against the Association. The underlying discrimination complaints were filed against the Association when it denied access to its Boardwalk Pavilion to two couples who wanted to perform civil union ceremonies there.

The District Court dismissed this case based upon the abstention principles set forth by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We conclude that the District Court correctly applied the doctrine of *Younger* abstention in dismissing the parties' claims concerning the Boardwalk Pavilion. With regard to the Association's request for declaratory relief to clarify its rights to use the rest of its property, we will remand to the District Court to determine whether relief is proper.[1]

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

1. The District Court focused solely on the Boardwalk Pavilion in determining whether to abstain under *Younger*. Similarly, the DCR proceedings at issue in this case concern the complaints of two couples who sought to use the Boardwalk Pavilion for civil union ceremonies. *See Bernstein v. Ocean Grove Camp Meeting Assoc.*, N.J. Div. on Civ. Rights, No. PN34XB–03008, at 2–3 (Dec. 29, 2008) ("[T]he only facility at issue in this investigation is the Boardwalk Pavilion."); *Moore v. Ocean Grove Camp Meeting Assoc.*, N.J. Div. on Civ. Rights, No. PN34XB–03012 (Dec. 29, 2008). The Association repeatedly emphasizes, however, that its request for declaratory relief concerns its rights with regard to all of its property, not just the Boardwalk Pavilion. The Association's complaint is consistent with this assertion. *See* Joint Appendix (J.A.) 34 (Complaint at 10) (detailing a request to use the Thornely Chapel for a civil union ceremony); J.A. 35–37 (Complaint at 11–13) (asserting cause of actions regarding the use of the Association's "facilities"); J.A. 38 (Complaint at 14) (requesting a declaration "insuring that [the Association's] buildings, facilities and property under its control are used for purposes consistent with its sincerely held religious beliefs").

We note that the Association's concerns regarding the Thornely Chapel seem unwarranted because it is settled that churches, seminaries and other religious facilities are not subject to the LAD. *See, e.g., Wazeerud–Din v. Goodwill Home & Missions, Inc.*, 325 N.J.Super. 3, 737 A.2d 683, 687 (N.J.Super.Ct.App.Div.1999) ("[T]he Legislature clearly did not intend to subject such facilities and activities [churches, seminaries and religious programs] to the LAD."). Because the record before us is only clear with respect to

## I.

Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.

The Association is a Christian ministry formed in 1869 for the purpose of creating a permanent Christian camp meeting community on the New Jersey shore. It owns all of the land in the seaside community of Ocean Grove, New Jersey. At the center of this case is a Boardwalk Pavilion located on Ocean Grove's boardwalk, which is used for a variety of events, including worship services, bible school programs, gospel music programs, and a summer band concert series. When not hosting an event, the Boardwalk Pavilion is open to the public. Although the parties dispute the extent to which the Boardwalk Pavilion had been rented for secular purposes prior to the present dispute, the Boardwalk Pavilion has been available for rental by the public for wedding ceremonies.

In March 2007, Harriet Bernstein and Luisa Paster, residents of Ocean Grove, applied to rent the Boardwalk Pavilion for their civil union ceremony. The Association denied the application, stating that the requested use was inconsistent with the Association's religious beliefs. Bernstein and Paster filed a complaint with the DCR, alleging that the Association illegally discriminated against them. Shortly thereafter, another Ocean Grove couple, Janice Moore and Emily Sonnessa, who had also requested to use the Boardwalk Pavilion for a civil union ceremony, filed a similar complaint with the DCR.[2]

On August 13, 2007, the Association filed the present action in the District Court, asserting that the DCR "[b]y accepting and investigating discrimination com-plaints against [the Association], specifically discrimination on the basis of civil union status based on the New Jersey Law Against Discrimination," has applied New Jersey law in violation of the Association's First Amendment rights of free speech, freedom of expressive association, and free exercise of religion. The Association sought injunctive and declaratory relief.

The Association filed for a preliminary injunction on August 25, 2007, seeking to enjoin the DCR from continuing its investigation arising out of the two discrimination complaints. Two days later, the DCR filed a motion to dismiss on the basis of *Younger* abstention. The District Court denied the Association's motion for injunctive relief on October 4, 2007, holding that because there were substantial issues of material fact as to whether the Boardwalk Pavilion was a place of worship or a place of public accommodation, the Association had not made a strong showing of likelihood of success on the merits. The Association decided not to pursue its appeal of this denial.

Then, on November 5, 2007, 2007 WL 3349787, the District Court granted DCR's motion to dismiss based on *Younger*. The District Court relied primarily on the Supreme Court's decision in *Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). *See* J.A. 18 (concluding that Ohio Civil Rights Commission was "directly on point with the present situation"). The Association filed a timely appeal of this dismissal.

## II.

The District Court had federal question jurisdiction over this case pursuant to 28

the Boardwalk Pavilion, however, we will remand the Association's claims regarding the rest of its property to the District Court.

**2.** While this appeal was pending, the DCR issued a Finding of Probable Cause to credit the allegations of Bernstein and Paster, and No Probable Cause as to the allegations of Janice Moore and Emily Sonnessa.

U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final order dismissing the case.

■■■ This Court "exercises plenary review over the legal determination of whether the requirements for abstention have been met." *Addiction Specialists, Inc. v. Twp. of Hampton,* 411 F.3d 399, 408 (3d Cir.2005). Once this Court determines that the requirements for abstention have been met, it "review[s] a district court's decision to abstain under *Younger* abstention principles for abuse of discretion." *Gwynedd Properties, Inc. v. Lower Gwynedd Twp.,* 970 F.2d 1195, 1199 (3d Cir.1992).

### III.

■■■ The *Younger* abstention doctrine reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Since its inception, the doctrine has been extended to include "state administrative proceedings in which important state interests are vindicated...." *Ohio Civil Rights Comm'n,* 477 U.S. at 627, 106 S.Ct. 2718; *see also O'Neill v. City of Philadelphia,* 32 F.3d 785, 789 (3d Cir.1994).

■■■ *Younger* abstention is appropriate when (1) there is a pending state proceeding that is judicial in nature, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity in the state proceeding for the plaintiff to raise its constitutional challenges. *Middlesex County Ethics Comm.,* 457 U.S. at 432, 102 S.Ct. 2515. When all three of these factors are met,

abstention is proper unless "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant immediate potential for irreparable harm to the federal interests asserted." *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989).

■■■ The Association contends that *Younger* abstention does not apply here because: (1) there was no pending state proceeding that was judicial in nature at the time the federal suit was filed; (2) the Association's claims do not implicate important state interests because the Association did not challenge state law directly, but only the allegedly unlawful conduct of government officials; (3) state proceedings do not afford the Association an adequate opportunity to raise its constitutional claims because its federal claims involve broader issues than those involved in the state administrative proceeding; (4) the "bad faith" and the "extraordinary circumstances" exceptions apply; and (5) the District Court cannot apply *Younger* after electing to rule on the preliminary injunction motion. After addressing each of these contentions below, we conclude that the District Court correctly applied the doctrine of *Younger* abstention in dismissing the parties' claims regarding the Boardwalk Pavilion.[3]

### A.

■■■ The Association argues that the first requirement of *Younger* is not met because the early stages of the DCR proceedings are investigatory, not adjudicative, and therefore do not amount to proceedings that are judicial in nature. The

---

**3.** As discussed *supra* note 1, we will remand the Association's claims concerning the rest of its property to the District Court for further review.

Association notes that the administrative process at issue in this case is divided into two stages: an investigatory period after which the DCR makes a probable cause finding; and an adjudicatory period during which a hearing is conducted before an Administrative Law Judge at the New Jersey Office of Administrative Law ("OAL"). The Association contends that the administrative process is not "judicial in nature" under *Younger* until a probable cause finding is made and the case is transferred to the OAL. Here, conversely, the Association notes that at the time the federal suit was filed, the DCR had not even begun its investigation. The Association thus attempts to distinguish this case from Ohio Civil Rights Commission, in which the agency had made a finding of probable cause prior to the filing of the federal court action. See *Ohio Civil Rights Comm'n*, 477 U.S. at 624, 106 S.Ct. 2718. Because we conclude that the DCR proceedings are judicial in nature from the point that a complaint is filed, we reject the Association's argument under *Younger*'s first requirement.

The entire process at the DCR is adjudicatory in nature. The agency action is initiated by the filing of a verified complaint with the DCR. N.J. Admin. Code § 13:4–2.6. The DCR then promptly serves a copy of the complaint on all respondents. § 13:4–2.8. A respondent must file an answer within 20 days after service, § 13:4–3.2; and, in the complaint, the respondent must state the nature of its defenses to each claim asserted, and must admit or deny each allegation in the complaint, § 13:4–3.2(a). After the receipt of a verified complaint, the DCR undertakes a prompt investigation to determine if probable cause exists to credit the allegations in the complaint. §§ 13:4–4.1(b) & 13:4–10.2(a). During the investigation, the DCR may, *inter alia:* serve interrogatories, § 13:4–4.3; issue subpoenas, § 13:4–4.4; take depositions, § 13:4–4.5; and hold fact-finding conferences, § 13:4–4. To the extent possible, the DCR also tries to resolve the matter through conciliation. *See* § 13:4–11.1(b).

After the investigation, if the DCR determines that probable cause exists to credit the allegations in the complaint, the DCR orders a hearing and transfers the matter to the OAL, which conducts the hearing. § 13:4–11.1(b) & (f). After this hearing, the Director of the DCR issues findings of fact and conclusions of law, and a corresponding order. N.J. Stat. Ann. § 10:5–17. The parties are entitled to judicial review, and can appeal directly to the Appellate Division of the Superior Court. § 10:5–21. Motion practice is also permitted throughout the process, and is governed by the New Jersey Court Rules prior to transmittal of the matter to the OAL, and is thereafter governed by New Jersey's Administrative Code. N.J. Admin. Code § 13:4–7.1.

■ Considering this elaborate statutory scheme for addressing civil rights complaints, we must agree with the District Court that "[t]here simply can be no question" that the DCR proceeding as a whole is judicial in nature. J.A. 22. The Supreme Court has recognized that *Younger* abstention applies to proceedings conducted by civil rights agencies, *Ohio Civil Rights Comm'n*, 477 U.S. at 627, 106 S.Ct. 2718, and that administrative proceedings can be judicial in nature from the moment a complaint is filed, *Middlesex County Ethics Committee*, 457 U.S. at 433, 102 S.Ct. 2515. The DCR proceeding in this case is very similar to the proceedings in *Ohio Civil Rights Commission* and in *Middlesex County Ethics Committee,* and is judicial in nature from its inception. Notably, when a complaint is filed with the DCR, the agency launches a "prompt" investigation that is akin to the discovery period in federal court. And if, at the end of the investigation, the DCR finds proba-

ble cause, a trial-like hearing is held. We conclude that this entire process is judicial in nature and prong one of *Younger* is met.[4]

### B.

■ Next, the Association contends that its claims do not implicate important state interests because the Association did not challenge the LAD directly, but only the allegedly unlawful conduct of government officials in enforcing the LAD. We disagree. The Supreme Court expressly held that there is "no doubt" that the elimination of prohibited discrimination "is a sufficiently important state interest" to satisfy the requirements of *Younger*. *Ohio Civil Rights Comm'n*, 477 U.S. at 628, 106 S.Ct. 2718. Moreover, when evaluating *Younger*'s second prong, this Court must look to "the importance of the generic proceedings to the state," not to the specific concern of the particular proceeding. *New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 105

L.Ed.2d 298 (1989) (noting that in *Ohio Civil Rights Commission*, "we looked not to Ohio's specific concern with Dayton Christian Schools' firing of Linda Hoskinson, but to its more general interest in preventing employers from engaging in sex discrimination").

The state interest in this case is the same as the state interest considered by the Supreme Court in *Ohio Civil Rights Commission*, and the Association's contention that its federal claims do not implicate the policy interests underlying the LAD is incorrect. The federal complaint arose out of the DCR's investigation into whether the Association's refusal to permit couples to use the Boardwalk Pavilion for civil unions violates the LAD. Clearly, therefore, New Jersey's interest in eliminating unlawful discrimination is at the center of this dispute. Creative arguments in a brief cannot undermine this commonsense application of the law. We therefore agree with the District Court's conclusion that the second prong of *Younger* is met.[5]

---

4. The Association also emphasizes that it is not appealing the denial of an injunction but only the denial of declaratory relief; it thus contends that its claims do not implicate *Younger* abstention or its underlying policy. Ocean Grove Br. 31–32 (contending that it is only requesting "a declaration of its constitutional rights ... not [ ] an interpretation of state law," and thus that the federal proceeding does not interfere with the DCR proceedings). Notably, in the companion case to *Younger*, the Supreme Court held that "the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope for federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Here, the Association's complaint arose out of the DCR's investigation into whether the Association's refusal to permit

couples to use the Boardwalk Pavilion for civil unions violates the LAD. The Association's argument that its federal claims are separate from the DCR proceedings is therefore mistaken—whether the relief sought is injunctive or declaratory, *Younger* abstention and its underlying policies are implicated in this case because declaratory relief would "result in a clearly improper interference with the state proceedings." *Id.*

5. The Association also relies on our opinion in *Gwynedd Properties, Inc.* to argue that *Younger* does not apply, asserting that the federal claims here are much broader than the state claims because the former concern the Association's use of all of its property, while the latter only concern the Boardwalk Pavilion. Ocean Grove Br. 44–43 (quoting *Gwynedd Properties, Inc.*, 970 F.2d at 1201 ("The federal action relate[d] to the [government officials'] conduct regarding the entire property, while the state proceedings relate[d] to [only a portion of] the ... parcel.")). As discussed *supra* note 1, we will remand the Association's claims concerning the rest of its proper-

## C.

Next, the Association asserts that the third prong of *Younger* is not met because the DCR proceedings do not afford the Association an adequate opportunity to raise its constitutional claims. Although the Association appears to concede that it is generally able to raise constitutional challenges at the DCR proceeding, it argues that its federal claims are broader than the issues pending at the DCR, and therefore that it is unable to raise all of its constitutional claims at the DCR. Specifically, the Association emphasizes that in federal court it seeks declaratory relief with regard to all of its property, but the DCR proceedings only concern the Boardwalk Pavilion.

■ To satisfy the third prong of *Younger*, it is sufficient "that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Comm'n*, 477 U.S. at 629, 106 S.Ct. 2718. This requirement is typically met for claims pending at the DCR because "[a]ny person aggrieved by a final order of the director [of the DCR] may take an appeal therefrom to the Superior Court, Appellate Division as an appeal from a State administrative agency." N.J. Stat. Ann. § 10:5–21. With regard to the adjudication of the Association's rights concerning the Boardwalk Pavilion, therefore, the third prong of *Younger* is clearly met. With regard to the rest of the Association's property, this point will be considered by the District Court on remand. *See supra* note 1.

## D.

The Association also contends that the District Court erroneously abstained un-

der *Younger* because the "bad faith" and the "extraordinary circumstances" exceptions apply. Specifically, the Association claims that: (1) the DCR acted in bad faith by endeavoring to apply the LAD against the Association because DCR's actions show disregard for federal and state laws exempting religious organizations from certain discrimination claims; and (2) extraordinary circumstances exist because the Association is subject to multiple administrative enforcement actions that have chilled its exercise of constitutional rights. We find these arguments to be without merit.

■ First, the DCR's exercise of its statutory mandate to investigate discrimination complaints cannot be construed as "bad faith," and the Association has not demonstrated that the DCR has conducted itself in a manner that shows any disrespect or disregard for federal or state laws. Similarly, the Association did not establish the existence of "extraordinary circumstances." This exception does not apply any time there is a chilling effect on the claimant's exercise of constitutional rights. *Younger*, 401 U.S. at 51, 91 S.Ct. 746 ("[T]he existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action."). Also, the Association's reliance on *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), is inappropriate because *Wooley* involved the threat of repeated arrests and prosecutions of individual claimants, which impeded the claimants' "ability to perform the

---

ty to the District Court for further review; therefore, this appeal only concerns the Association's rights with regard to the Boardwalk Pavilion. Because, unlike in *Gwynedd Properties*, the federal proceedings here are certainly

related to and would interfere with the state proceedings, *Younger* abstention is appropriate. *Cf. Gwynedd Properties, Inc.*, 970 F.2d at 1201.

ordinary tasks of daily life...." *Id.* at 712, 97 S.Ct. 1428. This civil case is distinguishable, and does not warrant the application of the "extraordinary circumstances" exception.

### E.

■ Finally, the Association contends that the District Court cannot apply *Younger* after electing to rule on the Association's preliminary injunction motion. We disagree. The District Court's denial of a preliminary injunction motion in this case was not a proceeding of substance on the merits. *See Ohio Civil Rights Comm'n*, 477 U.S. at 622, 106 S.Ct. 2718 (holding that the District Court should have abstained under *Younger* where the District Court initially refused to issue an injunction, finding that the First Amendment arguments were not ripe and, in the alternative, that the First Amendment was not violated). We therefore conclude that the District Court properly abstained under *Younger* and dismissed the case.

### IV.

For the foregoing reasons, we will affirm the District Court's judgment in part, and remand in part for further proceedings consistent with this opinion.